## CHESAPEAKE BEACH RAILWAY COMPANY *v.* WASHINGTON, POTOMAC AND CHESAPEAKE RAILROAD COMPANY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 35. Argued October 31, November 1, 1905.—Decided November 13, 1905.

In an action of ejectment in which the plaintiff relied upon a line of conveyances not going back to the original source of title coupled with possession on the part of a grantor, *held,* on a discussion of the evidence that the deeds sufficiently identified the land and that the plaintiff was entitled to go to the jury on the question of possession.

A deed by the trustee of a mortgage reciting a foreclosure decree is not limited in its operation to the authority conferred by the decree but passes the title of the trustee to the land which it purports to convey.

A reference in a declaration to tax sales of the land demanded will not be construed to import that there is a title outstanding in third persons, as against the allegation that the plaintiff was lawfully seized of the premises, no evidence having been taken on the subject at the trial.

A conveyance of land in the District of Columbia made by a disseisee is valid.

The title of a railroad company, as against a disseizor, to land conveyed to the railroad by an earlier company, authorized to extend into the District of Columbia, is not affected by the question whether the grantee also had been authorized to go there.

THE facts are stated in the opinion.

*Mr. Frederic D. McKenney,* with whom *Mr. John Spalding Flannery* was on the brief, for plaintiff in error.

*Mr. Charles Poe* and *Mr. Samuel A. Putman* for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action of ejectment in which the defendant in error, the original plaintiff, recovered judgment for the land in suit in the Supreme Court of the District. The judgment was affirmed by the Court of Appeals, 23 App. D. C. 587, and the case was brought here.

There was a motion to dismiss upon the ground that it affirmatively appears from the record that the matter in dispute, exclusive of costs, does not exceed the sum of five thousand dollars. But the reasonable inference from the record is the other way, *Harris* v. *Barber,* 129 U. S. 366, and affidavits are submitted which sustain the inference which we should draw. *Red River Cattle Co.* v. *Needham,* 137 U. S. 632.

At the trial the defendant presented no evidence, but asked the judge to direct a verdict in its favor, relying on somewhat technical criticisms of the plaintiff's case and saving its rights by exceptions. We shall state such facts as are material.

The declaration contains nine counts, for nine parcels of land, which the plaintiff (defendant in error) contends were

formerly part of the roadbed of the Southern Maryland Railroad Company and now are part of its own. The plaintiff sought to prove its title by putting in deeds of each of these parcels made to the last-named company in 1884 and evidence of possession on the part of the same, together with subsequent deeds finally conveying the land to the plaintiff. Of course this would be sufficient if made out. It is argued that the description in the first deeds is too vague to identify the land, and the argument is fortified by the testimony of a surveyor that "the deed is not definite enough to place it on the ground." But the deed was accompanied by plats to which they referred and the same surveyor testified that "the plats are as near identical [with the witness's survey of the locus] as it is possible to make them," and more to the same effect. It is evident that the former words refer to the descriptive language of the deeds alone, and that when the descriptions are taken as they should be in connection with the plats there is no difficulty with the deeds.

Next it is said that there was no evidence of possession on the part of the Southern Maryland Railroad. But the same surveyor testified that he knew the old Southern Maryland Railroad tracks out there, and had known them for thirteen years, and another surveyor testified that he was employed by that company in laying out its roadbed in 1886, that he remembered the line of this right of way, that the right of way of the Southern Maryland was sixty-six feet wide, and that the Chesapeake Beach Railway uses the right of way of the old Southern Maryland Railroad clear to the District of Columbia line. Without going into further detail or answering every minute criticism, we are of opinion that the judge was right in leaving the question to the jury, and that the jury were warranted in finding as they did. It is said that it must appear that the possession, if any, of the Maryland company was not abandoned. *Sabariego* v. *Maverick*, 124 U. S. 261. But in a case like the present, at least, where the tracks of the railroad were on the land and when the plaintiff exhibits a

series of deeds purporting to convey the property, the last one to itself, it is to be presumed that possession followed the title until the dispossession by the defendant took place. *Lazarus* v. *Phelps*, 156 U. S. 202, 204, 205. See *Bradshaw* v. *Ashley*, 180 U. S. 59, 62, 66. The defendant did not hold for such a length of time, free from dispute, that abandonment to it by the plaintiff could be inferred. The suit was begun on January 13, 1902, and the possession of the defendant is not carried back beyond 1898, if so far.

The subsequent steps in the plaintiff's title are as follows: A decree of the Supreme Court of the District of Columbia, foreclosing a mortgage recited to have been made by the Southern Maryland Railroad, and to cover all its property then or thereafter acquired; a sale and conveyance in pursuance of the decree to one Gregory by a trustee appointed by the court; a certificate of the incorporation of the Washington and Potomac Railroad Company, reciting the foreclosure and sale of all the property of the Southern Maryland Railroad and incorporating Gregory and others to take over the railroad; a conveyance of the property by Gregory to the new company, and a mortgage by it of the same property to the Union Trust Company of Philadelphia, both dated April 1, 1886, the date of its incorporation; a certificate of the incorporation of the plaintiff on July 24, 1901, reciting a decree of the United States Circuit Court for the District of Maryland, which foreclosed the last-named mortgage; reciting also a sale in pursuance of the decree, and incorporating the purchaser and others to take over the railroad; and finally a deed to the plaintiff, by the Union Trust Company, the trustee of the mortgage last mentioned.

The main objection urged to the title is that, as the record of the last foreclosure proceedings was not put in, it does not appear that the court attempted to foreclose property in the District of Columbia, and that as the decree is recited, it must be taken that the trustee was acting only by virtue of the power which the decree conferred. But the trustee had the

legal title and purported to convey all the property which it held. The source of its title was a conveyance to it by the owner. The decree of the court only determined a foreclosure and established the right of the trustee to convey without a breach of trust. Even if it is not to be inferred that the decree was as broad as it is recited to have been (see *Muller* v. *Dows,* 94 U. S. 444), the deed of the Union Trust Company conveyed whatever title it had. *Williams* v. *Jackson,* 107 U. S. 478. The suggestion that the instrument must be read as limiting itself by pure implication to rights conferred by the decree, and as excluding the only source of the grantor's title, does not merit extended discussion, but it may be mentioned that there is a covenant for future assurances, in general terms, not limited to any particular source. It is observed in one of the cases cited for the defendant that "the recital in the deed cannot enlarge or control the words of the grant." *Titcomb* v. *Currier,* 4 Cush. 591, 592. Still less can such a recital as this be taken to eliminate the only title which the grantor held. See further *Brobst* v. *Brock,* 10 Wall. 519; *Bryan* v. *Brasius,* 162 U. S. 415.

Other purely technical attempts to upset the verdict, so far as they need remark, may be disposed of in a few words. For some unexplained reason the plaintiff, in four of its counts, after describing the land and identifying it by the above-mentioned conveyance to the Southern Maryland Railroad, identified it further as conveyed by the Commissioners of the District on a certain date, we presume on a tax sale. It was objected that the latter allegation disclosed a title outstanding in third persons. No evidence was gone into upon the subject. Of course the meaning of the count was not to allege or admit such an outstanding title in some one else when the main allegation was that the plaintiff "was lawfully seized" at the date of the defendant's entry. We shall not spend argument upon that.

The Southern Maryland road was authorized to extend into the District of Columbia by act of Congress. Whether the

later roads had authority or not would not affect the title to the land.

The land seems to have been conveyed to the defendant in error after the plaintiff in error had taken possession, but that is immaterial. In the District of Columbia a conveyance by a disseisee is valid. *Matthews* v. *Hevner*, 2 App. D. C. 349, 357; *Roberts* v. *Cooper*, 20 How. 467, 483; *Peck* v. *Heurich*, 167 U. S. 624, 629, 630. A question is raised as to improvements, but it was not raised below and is not open here.

*Judgment affirmed.*